IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| UNITED STATES OF AMERICA )<br>)<br>)<br>v.                                                       )<br>                                                          )        2:04cr252<br>LABARON ROBINSON, a/k/a Labaron )<br>Joseph Robinson, a/k/a Lebaron Joseph )<br>Robinson,                                         )<br>                                                          )<br>                        Defendant.         ) | |

**MEMORANDUM OPINION AND ORDER OF COURT**

Defendant Labaron Robinson ("Robinson" or "Defendant") was indicted by a Grand Jury on September 28, 2004, and charged with one count of possession of a firearm by a convicted felon, in violation of Title 18, United States Code, sections 922(g)(1) and 924(e). The basic facts of the case are as follows: An automobile driven by Defendant was stopped by officers of the Pittsburgh Police Department on June 7, 2003. Defendant fled from the automobile on foot and dropped a loaded pistol during his flight from the officers. During the chase, Defendant also yelled, "back off, I've got a gun," or words to that effect. Defendant was unable to elude the officers and was arrested.

Presently before the Court for consideration and disposition is Defendant's MOTION TO SUPPRESS EVIDENCE AND STATEMENTS WITH CITATION OF AUTHORITY ("Motion") (*Document No. 21*) filed pursuant to Federal Rule of Criminal Procedure 41(h) and the Fourth Amendment to the United States Constitution. Defendant has also filed a POST HEARING MEMORANDUM IN SUPPORT OF MOTION TO SUPPRESS EVIDENCE AND STATEMENTS (*Document No. 31*). No post-hearing brief has been filed on behalf of the government.

Defendant seeks to suppress evidence obtained during the chase on the following grounds:

    a.    The decision to seize and subsequent seizure of Mr. Robinson and his car was unlawful, warrantless, without probable cause, and in violation of the Fourth

        Amendment to the United States Constitution;

b.     Any evidence seized based upon the unlawful seizure is fruit of the poisonous tree and must be suppressed; and

c.     Any statements alleged to have been made by Mr. Robinson must be suppressed under *Miranda* as fruits of the illegal seizure.

Motion at 2-3 (*citing Miranda v. Arizona*, 384 U.S. 436, 444 (1966)).

The Government argues that the officers "had the requisite reasonable circumstances to conduct a traffic stop," and that "the traffic stop was reasonable and proper under the applicable case law." Government's Response to Defendant's Motion to Suppress Evidence and Statements at 11 (*Document No. 24*).

On August 19, 2005, this Court conducted an evidentiary hearing at which City of Pittsburgh Police Officers David Weber ("Officer Weber"), Dan Hartung ("Officer Hartung"), and Sandra Follette ("Officer Follette") testified. Robert Abram ("Abram"), who was a passenger in Defendant's car during the incident, also testified. No other witnesses testified. At issue at the hearing was whether the police officers possessed either probable cause or reasonable suspicion to stop Defendant's vehicle. A transcript of the testimony adduced at the suppression hearing has been filed of record. *See* Document No. 26.

The Court will discuss primarily those basic facts which are relevant to the motion under consideration and except as otherwise indicated the following facts are basically unrebutted. Based on the testimony presented during the suppression hearing and the applicable law, the Court enters the following findings of fact and conclusions of law:

### **FINDINGS OF FACT**

1.     On June 7, 2003, at approximately 12:15 a.m., Defendant was driving his automobile, a gold or bronze four (4) door sedan, on Lincoln Avenue in the City of Pittsburgh. Defendant was accompanied by his friend, Abram, who was in the passenger seat of the car. Defendant and Abram were traveling "inbound" on Lincoln Avenue, *i.e.*, toward "downtown" Pittsburgh.

2. Earlier that day a tree had fallen in the 1300 block of Lincoln Avenue and blocked the inbound lane. At the relevant time Officer Sullivan was directing traffic around the tree. There was little to no traffic at that hour of the night. According to Abram, when Defendant approached the area of the tree, they encountered Officer Sullivan, who motioned for Defendant to go around the tree. Abram testified that Defendant drove around the tree (and Officer Sullivan) without incident, *i.e*, Officer Sullivan never instructed Defendant to stop, and Defendant's vehicle never struck or grazed Officer Sullivan. Abram also testified that when Defendant's vehicle passed by Officer Sullivan, the distance between Defendant's vehicle and Officer Sullivan was too far for the vehicle's side view mirror to have struck Officer Sullivan.[1] After passing the tree, Defendant and Abrams continued inbound on Lincoln Avenue.

3. Officer Weber[2] testified that Officer Sullivan sent out a broadcast over his police radio in which Officer Sullivan stated that he had been struck by the side mirror of an automobile while directing traffic. Officer Sullivan described the vehicle that struck him as a bronze four (4) door vehicle and stated the vehicle's license plate number. Officer Sullivan was not present and did not testify at the hearing. The government presented no eyewitness testimony of Officer Sullivan having been struck by the side view mirror of Defendant's vehicle or of any motor vehicle violation having occurred.

4. At that time, Officer Weber was on patrol in a marked police car six to eight blocks away from Officer Sullivan's location when he heard the call. Officer Weber then proceeded to the corner of Lincoln and Derry street. Less than a minute after Officer Weber heard the call, and while sitting at the red light at Lincoln and Derry, a gold-colored four (4) door automobile passed in front of him. Officer Weber immediately pulled behind the vehicle, which was still traveling inbound, and "ran the plate," which revealed that the vehicle's license plate matched Officer Sullivan's description.

---

[1] The Court credits Abrams' unrebutted testimony.

[2] Officer Weber testified that he had been a police officer with the City of Pittsburgh for six (6) years.

3

5. Officer Weber followed Defendant's vehicle for approximately half a mile. Defendant's vehicle eventually came to a stop at the intersection of Lincoln and Meadow street. Officer Weber then activated his overhead lights and siren and initiated a traffic stop. At the same time, Officer Hartung,[3] who was stopped at the corner of Lincoln and Meadow streets, pulled his police vehicle in front of Defendant's vehicle. With Officer Hartung's vehicle in front and Officer Weber's vehicle behind Defendant's vehicle, he was blocked in and could not drive away.

6. Defendant exited the driver's side door of his vehicle and fled on foot. Abram remained in the passenger seat of Defendant's vehicle. Officer Weber stayed with Defendant's vehicle, while Officer Hartung gave chase in his own vehicle.[4] Officer Weber detained Abrams to check for weapons, contraband and outstanding arrest warrants. After finding no weapons, contraband or arrest warrants, Abrams was permitted to leave the scene.

7. Defendant ran down Meadow Street a few hundred feet and made a left hand turn into an alley. Defendant then ran to the back of a row house that was on the corner of Meadow Street and the alley. At the back of the row house Defendant encountered a chain link fence, which he scaled. While Defendant was climbing the fence, Officer Hartung observed a silver pistol fall from his waistband. Defendant did not attempt to retrieve the firearm, but continued to flee. Officer Hartung quickly exited his vehicle and climbed over the fence; he did not secure the firearm at that time. Officer Hartung's police dog also exited the vehicle to join in the chase, but was unable to scale the fence, and was forced to wait at the vehicle.

8. Defendant, with Officer Hartung behind him, scaled a few more fences as he ran through the back yards of the row houses. At some point during the chase Defendant yelled, "you better back off, I have a gun, back off," or words to that effect. Eventually Defendant

---

[3] Officer Hartung testified that he had been a police officer with the City of Pittsburgh for thirteen (13) years.

[4] Officer Hartung was accompanied by a police dog, and therefore, according to Officer Weber, had a better chance of catching Defendant.

exited from the back yards and ran down a path.  Defendant then rounded a bend and jumped into some bushes in an attempt to conceal himself.  Officer Hartung saw where Defendant was hiding.  Defendant tried to get up, but was met with a blast of pepper spray from Officer Hartung.  In the brief struggle that ensued, a gun holster that Defendant was wearing fell to the ground.  Defendant was quickly handcuffed and taken into custody.

9. While Officer Hartung was in pursuit of Defendant, Officer Follette[5] arrived at Officer Hartung's vehicle.  Officer Follette quickly located and secured the pistol, which was fully loaded and ready to fire.

## CONCLUSIONS OF LAW

1. The Fourth Amendment guarantees that the "right of the people to be secure in their persons, houses, papers and effects against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched and the persons or things to be seized."  U.S. Const., amend. IV.

2. Stopping a car and detaining its occupants is considered a "seizure" and, therefore, is subject to protections of the Fourth Amendment, including a requirement of reasonableness under the circumstances.  *United States v. Hensley*, 469 U.S. 221, 226 (1985).

3. "As a general matter, the decision to stop an automobile is reasonable where the police have probable cause to believe that a traffic violation has occurred."  *Whren v. United States*, 517 U.S. 806, 810 (1996).  Furthermore, an investigative stop to check a driver's license and registration is constitutional when it is based on an "articulable and reasonable suspicion that . . . either the vehicle or an occupant" has violated the law."  *Delaware v. Prouse*, 440 U.S. 648, 663 (1979); *see also United States v. Johnson*, 63 F.3d 242, 245 n.2 (3d Cir. 1995) (noting that under Pennsylvania motor vehicle law, "a trooper who has reasonable and articulable grounds to

---

[5] Officer Follette testified that she had been a police officer with the City of Pittsburgh for thirteen (13) years.

believe that a vehicle or driver is in violation of the Vehicle Code may stop the vehicle").

4. Whether a reasonable and articulable suspicion exists turns on an objective assessment of the totality of the circumstances. *United States v. Sokolow,* 490 U.S. 1, 8 (1989).

5. When an officer "develops a reasonable, articulable suspicion of criminal activity," he or she may properly "expand the scope of an inquiry beyond the reason for the stop and detain the vehicle and its occupants for further investigation." *United States v. Givan,* 320 F.3d 452, 458 (3d Cir. 2003).

6. Generally speaking, "the burden of proof is on the defendant who seeks to suppress evidence." *United States v. Johnson*, 63 F.3d 242, 245 (3d Cir. 1995) (citation omitted). "However, once the defendant has established a basis for his motion, *i.e.*, the search or seizure was conducted without a warrant, the burden shifts to the government to show that the search or seizure was reasonable." *Id.* (citation omitted).

7. "On a motion to suppress, the government bears the burden of showing that each individual act constituting a search or seizure under the Fourth Amendment was reasonable." *United States v. Ritter*, 416 F.3d 256, 261 (3d Cir. 2005).

8. When police officers stop a vehicle based solely upon another officer's radio call or bulletin, "the government [is] required to present evidence at the suppression hearing of the requesting police officer's reasonable suspicion." *United States v. Coward*, 296 F.3d 176, 179 (3d Cir. 2002) (*citing Whiteley v. Warden*, 401 U.S. 560 (1971).

9. In *Coward,* the United States Court of Appeals for the Third Circuit observed that "a finding of reasonable suspicion to justify [a vehicle] stop required the presentation of evidence by the government that the officer who issued the radio bulletin had reasonable suspicion, not simply that it was reasonable for the arresting officer to have relied on the bulletin." *Coward*, 296 F.3d at 180.

10. The Court finds and rules that the government did not present sufficient evidence from which the Court could conclude that Officer Sullivan had an articulable and reasonable suspicion that Defendant had violated the law during the time that Defendant and his vehicle were observed by Officer Sullivan. *Prouse*, 440 U.S. at 663. The Court also finds and rules that

the subsequent stop of Defendant's automobile by Officers Weber and Hartung was unlawful. *See Coward*, 296 F.2d at 179-80.  The Court further finds and rules that the evidence obtained during the subsequent foot chase was obtained by exploitation of the illegality of the traffic stop. Therefore, the evidence obtained from Defendant during the foot chase will be suppressed as fruit of the poisonous tree.  *Wong Sun v. United States*, 371 U.S. 471, 487-88 (1963); *United States v. Burton*, 288 F.3d 91, 99 (3d Cir.), *cert. denied*, 537 U.S. 1039 (2002).

## **CONCLUSION**

     For the reasons hereinabove stated, the Motion to Suppress filed by Defendant will be granted.  An appropriate Order follows.

McVerry, J.

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| v. ) | 2:04cr252 |
| ) | |
| LABARON ROBINSON, a/k/a Labaron ) | |
| Joseph Robinson, a/k/a Lebaron Joseph ) | |
| Robinson, ) | |
| ) | |
| Defendant. ) | |

## ORDER OF COURT

AND NOW, this 10th day of November, 2005, in accordance with the foregoing Memorandum Opinion it is hereby ORDERED, ADJUDGED and DECREED that Defendant's Motion to Suppress Evidence and Statements with Citation of Authority (*Document No. 21*) is GRANTED. The evidence obtained from Defendant during the June 7, 2003 traffic stop and subsequent foot chase will be suppressed as fruit of the poisonous tree.

BY THE COURT:

s/ Terrence F. McVerry
United States District Court Judge

cc:   Almon S. Burke, Jr., AUSA
      Email: almon.burke@usdoj.gov

      Jay J. Finkelstein, AFPD
      Email: jay_finkelstein@fd.org